Good afternoon, ladies and gentlemen. I am Justice Lidalia Puchinsky and you're in the first division of the First District of the Illinois Appellate Court. Today we're hearing Appeal Number 1210942. And normally on these Zooms, I try to give everybody 10 or 15 minutes. The appellant reserves a couple of minutes for rebuttal. We may ask you some questions during that, but I assure you that we have read the record. We have read the briefs. We're familiar with the arguments. So we suggest always that you start with your best argument first and then work your way down if you have time. So with that in mind, if you could introduce yourselves, please. Luke Kasson Good afternoon, Your Honor. Luke Kasson for the appellant, Adriana Mazzutis. Adriana Mazzutis Thank you. Victor Pioli Good afternoon, Your Honors. Victor Pioli, P-I-O-L-I, here on behalf of the appellees, Lawrence Karlin, Warren Ruppell, and the law firm of Ruppell Wineter. Adriana Mazzutis Okay, that's great. Mr. Kasson, please. Luke Kasson Thank you, Your Honor. And good afternoon. May it please the court. I'm Luke Kasson. I am counsel for the appellant, Adriana Mazzutis. And we're before the court today to discuss the dismissal of Ms. Mazzutis' first amended complaint in the trial court based on two principles, the Section 603 for failure to concisely state a claim and 615. What I want to focus on with Your Honors today are just a few matters. I believe that the matters have been fully briefed adequately and are before Your Honors. The first and foremost is the standard of review. The parties appear to be at odds as to what the appropriate standard of review is. I want to discuss that just briefly and why that's important in this case. We believe that the appropriate standard of review is de novo. As we explain in our brief in some detail, why this particular case, but this category of cases generally should be I would concede with Your Honors that there are a number of cases that suggest that the appropriate 603 standard of review is an abuse of discretion. However, what those cases and other cases that address this issue clearly state is where the appellate court sits in as good a position as the trial court. There is no reason and no basis on which the appellate court or the reviewing court should cede its power of review to the statements or positions of the trial court. This is that case. Specifically, what this court has before it is a complaint in which it sits in equal position. There was no testimony. There was no factual development. There's no discovery in this case. What we have is simply the complaint, the First Amendment complaint on which the court rendered its decision. Secondly, what this court has is the court's decision. The trial court issued a written ruling on both of these issues under 603 and under 615. There's no reason or basis on which this court should defer to the trial court in determining the outcome of this case. Is there a case that has adopted your suggestion that we use the Benovo Review under 603? Yes, Your Honor. I've cited that case in my brief. The Schulte case addresses that specifically. Most of the cases go the other way. Most of the cases do. One of the interesting things about some of those cases, and I can't speak categorically to all of those cases, but one of the cases cited by the appellee in its brief is Cable America v. Pace. That's a little confusing as far as the application of the appropriate standard. In that case, specifically, the parties agreed to what the standard of review was. The court didn't find that the standard of review should have or even analyze that it should be something else. But what Schulte does, and Schulte was decided after Cable America. In Schulte, those facts are much more on point to where we are today. Looking at those cases as a category, Your Honor, what we find is the simple principle of appellate review. If the court of review stands in the same position as the trial court, there is no reason to cede that authority to review. It is a fresh review based on what was before the trial court. Here, you have all of that information that the trial court had. There are other of those cases that find the abusive discretion standard. There were instances in those cases as a general category where the trial court was making a decision based on something that it had a particular or unique access to. The Schulte case lays this out very nicely. But beyond those two cases, the vast majority of cases through the decades say something different. You are asking us to follow the minority view, I guess. I would. And where would that stop? If that's the way we should do it, then I guess on everything that comes before us, when we can make that kind of decision that we're in the same position to apply the law that whatever standard may have been before, it always should be de novo. It should be de novo. And that's precisely what we're asking. We're asking this court to not let me I understand what you're asking. If we don't agree with you, do you lose? I don't think we necessarily lose. But certainly, that's a question. Let's say you lose on that argument. Now where are you? That's my question. Well, if we lose on that argument, then that makes the 603 analysis much different. Because you are deferring to the trial court without the opportunity to analyze whether the trial court was correct in its decision. No, okay. I understand. I mean, you're arguing the point. I'm just saying, let's assume. I'm not saying we decided. I don't know what my colleagues may say. And I'm not saying that I I'm just I'm trying to find out the other side of the coin. That is, using your first argument, and that's the procedure, you know, give us one of your best arguments. And so it's very important to you that we use a de novo review on the 603, which is a major portion of the appeal. Okay, I understand it. Okay. But what would happen if we don't do how does that affect you going forward on this case? That doesn't leave you much room. I assume that's what you're saying. That that's precisely what I'm saying. And I think the example would be the lower court, the trial court made a determination that there are four claims made in count one, or two claims made in count two, or two other claims in count two, it seems overly deferential to for, to say, this court can't look at that and say, the trial court was wrong. Okay, so let me accept what you said. Let's look de novo account, let's say two. Now, I look at the title of count two. And I've read your series of complaints, but this is the one that's happened. It says legal malpractice regarding breach of fiduciary duties for conflicts of interest. Now, what is this count? Is it a legal malpractice count? Or is it a breach of fiduciary? Well, excellent question, Your Honor. It is a legal malpractice count. And it very much so is everything legal malpractice and breach of fiduciary duty. And you know that they're they're very different claims. And you look back at that case law. You can't make those claims together. I mean, that's what the cases say. That's what the cases say. Yes. So you agree. So I mean, if it's a breach of fiduciary duty, that's a breach of fiduciary duty. You know, yeah. I mean, if it's a legal malpractice, it's a legal malpractice. And you're, you're kind of in the in two and three, you're mushing them together. And, and then, you know, that's just the start. And I'm trying to figure out what you say is regarding breach of fiduciary duties. Well, you don't need a legal malpractice. If it's a fiduciary duty, it's a separate, it could be separate. But it's all one in the same. So you're saying here is one in the same. And I'm not quite sure what you're saying. And why you said it this way. I mean, you end request entry of an order that it's a defendant's negligent malpractice was a sole and proximate cause of damages suffered. So that means your, your claim is legal malpractice. You're not talking, you're not talking about, but you're talking about fiduciary duty. I don't understand. Okay, so let me address that why, why it's a single count in a single theory of recovery. And that we believe that the test is not the use of the words, but the claims made, I want to address one point that you just made your honor. The fiduciary breach of fiduciary duty count a claim, a theory on which recovery can be sought is different than a legal malpractice. Now where a legal malpractice claim and a breach of fiduciary duty claim are based on the same operative set of facts, they merge that much is clear in the law. It's one has to, when can be dismissed outright, usually the, the breach of fiduciary duty claim. What's important in, in saying that alone, the breach of fiduciary duty, those acts that support a breach of fiduciary duty claim, which cannot exist in the, in the environment of both a breach of fiduciary duty and a legal malpractice claim can be the predicate acts for the legal malpractice. In fact, both Hull and Rice, they elucidate this quite well, is that there are, where there are multiple acts of, of malpractice, those can form the, the, a single theory of legal malpractice. Now, when speaking of a, a breach of fiduciary duty or a fiduciary duty period, the court has said a breach of fiduciary duty is in a, in a, in and of itself an act of malpractice. It's specifically metric suggests that all breaches of fiduciary duty is malpractice. So they're not exclusive of one another. And the, the Appalese and quite frankly, the trial court simply adopted this without analysis about what those breaches or what those claims were and what the theory of liability was. Now, there is a theory of liability for each of count one, two, and three, all coming under a, a claim of meta of legal malpractice. They generate from different series of acts, but the series of acts do not for foreclose a plaintiff from bringing that claim. That much is absolutely clear in, in the jurisprudence in this area. So I just, just to make sure I understand, those claims then are all legal malpractice claims. They are underlying facts, like in count to have to do with conflicts of interest. Correct. Okay. So let's, but, okay. So the next problem would be, where are the facts that set forth the legal malpractice claim here? It seems that you have a lot of conclusions, but where the facts and particularly considering that you've already had discovery in my summary judgment in the earlier case. So it, it's very, I'm trying to figure out what happened. What I mean, explain count to tell me in, and say, simply tell me what this claim is about. Count to is, is real, relates to a, a legal malpractice by the defendants, the appellees, wherein they, they took actions outside of the, the conduct of litigation that damaged the, the plaintiff. That's as succinctly as I can say. Okay. So actions. All right. Now let's, then what actions did they take specifically? Because when I read this again, I'm just picking a paragraph 76 in January, 2011, the plaintiff informed offended Carlin that Mr. Michael was not to receive any information about the poll cats litigation. There is no informed how, how he was informed when, I mean, it's a January, it's a long time. Was it orally in writing? What was it to receive any information? You know, what is any information about? I don't know what that means. What, what, what does I trying to figure out what this is all about? Well, that is what it's all about. They received information provided by the defendants that they were not, they were specifically told not to provide. Okay. What information is that information relating to the the litigation specifically relating to her taxes, her financial condition, which is all that's all laid out. Is that the poll cats litigation? Is that the mother? That's the poll cats litigation. And the Michaels were not involved in the poll cats litigation. The Michaels were not parties to the litigation. I can't say that they weren't involved because that's the cynic one on of our, our discussion here today is why they were so involved and why Mr. Carl and Mr. LuPel brought them in, in the manner in which they did without being parties. So how they were paid by, by them and how they were served. How they were served. What do you mean by that? Well, Mr. It's our theory as laid out in the play that Robert Michael and George Michael, specifically George Michael, his interests were the ones that were being served. Not Ms. Mizzou disses is that they set up a, a, this is outside of the litigation had nothing to do with the litigation. They set up a, a, a corporation. They set up a, or a liquor license application. When you say they, you're talking about the defense. We're talking about the defense. Okay. Now, where does it say here that they set up, you know, this, this liquor license and this corporation, where, where is that in the cap? My apologies. That's in count one. So in count two relating to the fiduciary duties and conflict of interest, your, your question is specific to count two. Yes. All right. So the, the, in the conflicts of interest, you're saying, you know, so, and you don't, you don't incorporate one into two. So just the first 17 paragraphs. So count two has nothing to do with what you just told me, right? That's, that's count one. My apologies. Count two is specifically about his representation of Ms. Tammuzian and Mr. Mr. Michael in litigation against my client, against Ms. Ms. Ms. Mizzou dis where am I supposed to figure that out? In what litigation, what litigation is that? Is that the paragraph 68? Polkats litigation? No, that's not Polkats litigation. That was, that was a claim that he brought Mr. Carlin specifically for Mr. on behalf of Mr. Michael brought him as a first, he tried to intervene on his behalf. And then there was a, a subsequent filing that ultimately ended up with judge Novak, but was a separate case. Mr. Michael was suing Ms. Mizzou dis. But you're telling, you're telling that she, the date she fired them was what day? That was February, I believe it was February 4th of 2011. February 4th of 2011. And they represented her before that. And you're saying here in paragraph 68, that after that, the same lawyers sued their immediately former client representing the Michaels? That's what happened. Okay. And okay, so that's paragraph 66, 69 says alleged identical claims as the plaintiff claims against the club, except that Michael was asserting that he had a right to control and ownership of the club and that Michael had obtained the plaintiff's rights during the defendant's representation of the plaintiff. All right. So are you saying this is a violation? He can't represent the Michaels against them? Is that part of this claim? That is. Okay. That's what you're trying to say here. All right. Because your comment about I'm sorry, just Simon. No, go ahead. You had mentioned a liquor, liquor license fact. And I'm sorry, I can't find that. Where is that at? I thought you said it was in count one, but you could just direct my attention to it. I don't want to take up all of your time. I apologize. I should have this at the ready. And well, maybe I do that on rebuttal. But let me ask you another question. With regard to the Tammuzian suit, Tammuzian was involved in the Polkett's case, right? Tammuzian was not involved in the Polkett's case. So Carlin never represented or never opposed Tammuzian? He represented Tammuzian. He represented Tammuzian. He filed a lawsuit for it. I understand that. But does that have any what's that have to do with your client? Because that was making the that was a client or a person who was making the same claim that Miss Mazzuto's had that they were adverse claims. You're saying where do you say that the adverse claims and where and how are they adverse? And where's that? And count to your honor. Paragraph 72. 78. Well, but I mean, claiming the right of ownership filed an action, you describe the action. The defendants represented others and clearly adverse interest. Aren't those conclusions? You know, saying clearly adverse interest is a conclusion. I mean, I'm trying to figure out a lot of this. Are seems to be conclusions. So my question to you is. What do you contend is the difference between the factual allegations and conclusion allegations? How do I how do I read this complaint? I mean, when you say on February 9th, 2012, Tammuzian action was voluntarily dismissed. That's factual. Okay. But to say that there was the defendants represented others with clearly adverse interest. That's a conclusion. Well, in paragraph 82, Carlin file on October 18th, 2011, Carlin filed an action on behalf of Susan Tammuzian claiming a right of ownership in in Polkatz, which directly diminished the value of the plaintiff's ownership. But that's the conclusion. I mean, you already mentioned it twice. And I'm just an owner of 1 million. I mean, we don't have a copy of that as part of this. I just how do I know that? I mean, what what are the facts that say that that created that conflict? I mean, sometimes people lawyers can represent parties who are both defendants in the same manner or have similar interests. Not requesting this, the exact same thing. This is what count to lays out in the prefatory facts are the the underlying litigation brought by Mr. Carlin, Mr. Lupell were that Miss Mazzutis owned the equitable rights in the club. Then they bring a claim on behalf of after they were terminated, claiming that Tammuzian had a right to the club. But but it was you alleged in your complaint that whatever the basis of that lawsuit was, it was dismissed. The claim was dismissed. So how then is your client damaged? Well, that I that is more of a question of fact, how specifically they were damaged was they reduced the value of the club by a million dollars. How's that? What is that based on based on the valuation of the club? But where do you sleep? I mean, how do you say a million dollars? I see the million dollars. Okay. How do to me it just comes up? You could have said 3 million. I don't know. Where's the description? Where are the facts to say the million dollars that you're damaged by a million dollars? Well, I guess what do you base that? Let me ask you. What is the base? It's based on a valuation from an evaluator of the of the of the problem is not here, which is not talked about with valuation of the property when it happened. I mean, those are facts that would show damages. But to say I was damaged by a million dollars is not is a conclusion. I was damaged by a million dollars. How was I damaged? Those are facts. Okay. I was damaged because somebody else filed a lawsuit. Whatever it is, I don't know. And then an expert came in and did this evaluation and there's a judgment or something or a settlement and I lost, you know, but you have none of that. So the catch 22 of the situation is if I plead that there is an evaluation of the club done and that club or that evaluator concluded that the valuation was diminished by a million dollars, that's a conclusion too. A lot of things are, you know, almost every fact is is could be considered a conclusion. Okay. It depends. It's a very close. You know, what is the fact? What is the conclusion? The United States Supreme Court hasn't even figured that one out yet. If you if you read the, you know, two in those cases, it's very confused. So we're not going to be able to figure that one out here. But we do know that if you don't have those things, it is a conclusion. Just to say the one state without more doesn't give us any idea how you got there and that you were damaged. I mean, you know, how do we know this? I mean, how do they know how do they respond? I'm damaged by a million dollars. I mean, that's a conclusion. But your your honor, this is the this is again, catch 22. If they answer and they say, I can't answer that, because I don't know what the whether that's conclusory. And I say, well, okay, wait a minute. I will. I will tell you that we have expert x that says that the there's a diminishment of the value of the club because of the filing of the Tamoosian matter by a million dollars. And then there's an objection. And then there's a a motion on it saying this conclusory. That's those aren't facts. We don't get anywhere. You're saying it was undisclosed x. I mean, you had you had done this in connection with your lawsuit, or with another lawsuit. I mean, I'm not clear where this expert came from, or who he is, or she. But how are those? How are those facts? Okay, but you would agree, though, that just saying a million dollars, I want a million dollars, when you have to show actual damage? Yes. Okay. But just saying a million dollars is a conclusion. And and we have to one of the criteria for you to get past 615 is actual damages. Otherwise, you don't get past goal. So how are we supposed to consider this in light of that? Well, for instance, Your Honor, this wasn't decided on 615. This is decided on 603. So that's a different title. Well, it's the same thing. Because I mean, 603 603 doesn't say a claim. Under 603, you're saying we can't figure out what claim you're trying to make. Okay. Because it's not clear playing, so forth, which is what the court is tracking. And what we have here is instead of the first time around, you had both times you have six counts. Now you have 33 pages of 177 paragraphs. Last time it was 39 pages of 157 paragraphs. But a lot of those paragraphs are the exact same paragraphs with some parts and everything else. I have to I mean, I read the complaint and and the other complaints and I still am not clear what you're trying to plead. I'm just I'm just saying that and not as a in any other way. It is it is difficult to follow this and figure out what's going on, particularly when you get into those large paragraphs with lots of subparts that like say a lot of conclusory things and where this is all coming from. You know, she said here, paragraph 56 suffered damages in the following particular loss of diminished value of interest in the club. How did that happen? The loss of business? How did what they did equal loss of business interest in voucher and poll kits? How did what they did create the loss of life insurance proceeds paid to her due to the death of her husband? I mean, where is the facts that would tell us that? And then we have this second lawsuit, the first lawsuit. I mean, it's really hard to add something that where are the facts? You talk about her losing her home and a million dollars. Where are the facts that support that? Where are the facts that support that all this money is allegedly being taken out of her accounts? Well, that's quite again, we get into the same roundabout discussion on what equates the fact and what equates a conclusion. If you know the difference is, by my count, you've had seven tries at this. And you've done discovery. So this is not a situation where you're on your second complaint and that cause of action. I agree that that is the status of the complaint. Is there anything else that you want to know? I'm quite a bit over my time. Okay. So that is all the appellant has at this point. I just have one random question. In paragraph 110, you talk about Patrick Splann. Who's Patrick Splann? Patrick Splann is Ms. Mazzutis' former boyfriend. And information was provided to him by the defendants, by the appellees, about the litigation. Thank you. Thank you. Any other questions for Mr. Kasson? Okay. Mr. Pioli, please. Hey, please, the court, counsel. Once again, Victor Pioli on behalf of the appellees, Lawrence Carlin, Warren LaPell, and the law firm of LaPell-Weininger. Your honors, this is a case which has simply run its course. After 10 years and seven attempts, with the benefit of written discovery, oral discovery, and expert discovery, plaintiff is still not able to plead a viable complaint, complying with the Illinois rules of practice and civil procedure. In particular, plaintiff's complaints run afoul of section 2-603 of the Code of Civil Procedure, which provides that each separate cause of action, upon which a separate recovery might be had, shall be stated in a separate count. This case was before this court in 2019, after the trial court had granted our defense motion. Is there anything we don't already know? What about the fact that we're told that counts 2 and 3 are legal malpractice counts and not breach of fiduciary duty counts? Doesn't that clear things up? I don't believe it does, Judge, and the reason why it doesn't is, one, they're labeled as legal malpractice regarding breach of fiduciary duties. It's a legal malpractice count and it says at the end, negligence of malpractice. Based upon breaches of fiduciary duties, they're making a legal malpractice claim. That's one count. Where's the other counts? You can allege, what the case law holds is that you can allege the same conduct that can form a legal malpractice and a breach of fiduciary duty in a separate count. There is no case law that says that you can combine the two, and the reason why count 2 is deficient, Your Honor, is because if you look at count 2, it alleges a breach of fiduciary duty based on an alleged conflict of interest. Well, part of the problem is that that was already in count 1. In particular, if you look at paragraphs 49, D, E, F, and G, those alleged breach of fiduciary duty with regard to alleged conflict of interest. We have different counts being alleged in count 1 and count 2. You just can't commingle all your causes of action into different claims. It's completely improper. Which subparts of 49 are you talking about? 49, D, E, F, and G. Okay, so you're saying that they're making the same claims in 2 that they basically say in 1. But even at 49, are those facts in your opinion, or are those conclusions? It's tough for me to tell sometimes with this complaint, Judge, but I interpret them as facts. I mean, they're conclusory facts. Let's put it that way. They allege that my clients elevated the interests of the Michael Brothers over those of the plaintiff. It's a conclusory fact, but it's one that's ultimately not supported either, and we're going to get to that when we talk about the 2-6-15 aspect of the motion. Before I delve into that, though, I do want to streamline things. I want to touch upon a couple of the arguments that Mr. Kaysen raised. The first being the standard of review. As we put forth in our brief, on a 2-603 appellate review, the standard is for an abuse of discretion. The cases cited by Mr. Kaysen, the Schulte case out of the 4th District, that did not involve a 2-603 motion. It involved a reconsideration, so it's completely inapplicable. All the case law, and in particular, Justice Hyman, you'll see the case that we attached to our brief, the case that you authored, Anderson v. Lachinsky. It clearly states that the standard of review is abuse of discretion, so I don't think there's any dispute about that. A couple of other things that Mr. Kaysen touched upon. Justice Hyman, you mentioned, you questioned Mr. Kaysen about paragraph 68 and this alleged filing of another claim by my clients on behalf of Mr. Michael against the plaintiff. Judge, you mentioned we're at this point where we completed discovery. We've gone through this for 10 years now. That is a completely false allegation, and we went ahead and we mentioned it in our appellate brief. Mr. Michael was represented by an attorney, Richard Zachary, in that case. Mr. Carlin did not represent Mr. Michael in that case. It's a false allegation, not to mention the fact that the claim isn't sufficiently fleshed out. What you're saying is extremely important because there may have been a false statement made before a court which should be reported to the authorities that that's what had happened here, because you're saying that when they alleged that defendants filed an appearance for George Michael against plaintiffs in that case before Judge Novick, are you saying that that is false? It's either true or it's false. That is not true. It's totally not true. Absolutely untrue. Untrue. Untrue, okay. So, Attorney Zachary that filed the appearance on behalf of Mr. Michael. But did they ever file, did defendants appear, did they ever file an appearance? No. And they had nothing to do with that suit? Does that, I mean, what, what, and it's somebody, that is something can be checked, right? I mean, that can be checked. It's in the court file. Yeah. And there's a rule about making allegations that are untrue. Was that brought before the judge in this case? No. I dare say, did I file a rule 137 motion? I did not. Okay. And, you know, it's not that the disclosed strategy judge, but I guess I was happy with sanctions motion. But they're making the same, I mean, there's so much I've read. I'm asking you though, if you can recall that they made that allegation separately before us, or if it's in the complaint, I mean, it should have been brought below, but if they're re-incarcerating it in the brief before us, then that might be a separate, something separate. I agree with the judge. And I think there's also under the rules of professional conduct, I think there's a, there's a duty. If you're aware of a false statement, you have a duty then go and correct it. And that's under rule 3.3, duty of candor to the tribunal. So I do think that there was a potential violation with that statement. Okay. Are there any other statements here that were false? You know, I'd have to go through the complaint again, judge. And, you know, there were things that were brought out in discovery. Like I said, we did go through seven years of discovery in this case. And there were many things that were proven to be false. Particularly when, you know, there was an allegation that Mr. Carlin stole money out of the plaintiff's bank account. That clearly did not happen. The money was transferred out of her account voluntarily. And, you know, there was an allegation that she, her signature was forged on the documents concerning Mr. Michael. It was admitted in her deposition that she didn't forge that document. So there are all kinds of things like that that are alluded throughout this complaint that yes, were false. And I think, you know, if I remember correctly, because I didn't prepare the summary judgment hearing, but I think we highlighted many of those things in our summary judgment briefing back when we were before the court in 2019. And still those, those allegations made their way to this complaint as well. Turning to Injustice Carlin, you stole a little bit of my thunder on the Tammuzian case. With regard to that allegation, yes, in paragraph 83, it was alleged that it was voluntarily dismissed. What you did not see in the complaint, and also a fact that came out, the suit by George Michael against Ms. Mazzutis was also dismissed. So there can't be any, any damages that were sustained by Ms. Mazzutis as a result of the filing of that lawsuit, even if Mr. Carlin was the one who filed it, which he was not. Well, along those same lines, you know, the summary judgment complaint that they're complaining about, that was dismissed too, right? I'm sorry, the summary judgment? Summary judgment motion that they, here, they're complaining about a summary judgment motion being filed, I think, against the plaintiff, but wasn't that? She won the summary judgment motion. Correct. I'm sorry. You're, you're much more articulate than I am. It's late in the day, Justice. And then you have a great compliment. Justice Carlin, you also mentioned something about the liquor license. I just want to be in complete candor with the court. That is actually alleged in paragraph 153, which is in count six, not count two, as counsel had indicated. And that's a count six is a breach of contract account. I don't understand how applying for the liquor license constituted a breach of the agreement between the parties. But as we put in our brief, count six is just a hodgepodge just throwing together of all the allegations, previous allegations and throwing it into a breach of contract account, which is obviously improper. That allegation pertains to Arachat PK LLC. Correct. That was the LLC that applied for the liquor license. But what relation does that have to this litigation? I don't think it does. Mr. Carlin and Mr. LaPell had applied, had formed that entity, and they applied for a liquor license. Nothing ever came of it. Nothing ever happened with it. So I don't know why it's... Is there a condition somehow to pull kits? I don't believe so, no. That's not alleged anymore? No, it's not. And like I said, nothing ever happened with it. I believe as Mr. LaPell and Mr. Carlin both testified in their depositions. So it's just another, like I said, just throwing an allegation against the wall and see if it sticks, but there's just nothing to it, which is the problem with a lot of these claims. Judge, I'm not going to go ahead and go through the specific, because it sounds like from your questioning, you've actually gone through all the new counts and the most recent complaints. So I'm not going to waste your time and go through them and highlight why they were violated of 2603. I think it's readily apparent on the face of it. So with that, I just want to touch a little bit on the 615 aspects of the motion. And Justice Hyman, you mentioned, asked Mr. Kaysen, he alleges that there was certain information that was disclosed to other parties. A big problem we've had since this is going back to 2013, when this case, 2012, when this case was instituted, we filed motions to dismiss asking, what is this information? And we did it during discovery. I asked Ms. Mazzutas during her deposition, what is this alleged information that was disclosed? And I've never gotten an answer. I've been sitting here for 10 years trying to get an answer to these questions, and I've just never gotten them. And once again, this complaint is filed, and it doesn't allege what this information is or how its disclosure allegedly harmed Ms. Mazzutas. So the 615 deficiency in the complaint are evident. Even if the trial court didn't dismiss on 2603 grounds, there were certainly ample grounds to dismiss on 2-615. So with that, like I said, I'm not going to take up any more of the court's time, because it sounds like you have a pretty good handle on what was alleged and not alleged in the complaint. But if your honors have any questions, I'd be happy to answer them. Thank you. Any other questions? Mr. Kaysen, to rebut, wrap it up? We have no further rebuttal. I think we've covered the points we were intending to cover. All right. I'll ask my colleagues one more time, any other questions? Hearing none, I want to thank you both for your very solid oral arguments on behalf of your clients and the briefing that was done. This is obviously a complex case with a lot of layers. We are aware of that. We've read everything. We've read the complaints, read the record, read the briefs. And at this time, we'll take this matter under advisement. And this court is adjourned.